1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CHIOFAR,

             Plaintiff,

      v.

CAROL SCHAPIRA, Judge, King County
Superior Court, and ROB McKENNA,
Washington State Attorney General,

             Defendant.

CASE NO. 07-0244 JCC

ORDER

       This matter comes before the Court on Petitioner Michael Chiofar's 28 U.S.C. § 2254 action challenging his King County Superior Court conviction on a charge of intimidating a judge (Dkt. No. 4) and Magistrate Judge Benton's Report and Recommendation (R&R) (Dkt. No. 17) to dismiss the action for lack of subject matter jurisdiction. The Court has considered Petitioner's Objections to the R&R (Dkt. No. 18), Respondent's Response (Dkt. No. 19), and Petitioner's Reply (Dkt. No. 20). Having determined that oral argument is not necessary, the Court hereby ADOPTS the Magistrate's R&R and DISMISSES Petitioner's action.

I.     **BACKGROUND**

       Because the parties are familiar with the factual and procedural history of this case, the Court will

ORDER – 1

1  not recount it here except briefly, as necessary to explain the Court's reasoning. In 2002, Petitioner was a

2  party to a lawsuit in King County Superior Court, in front of Judge Richard McDermott. Apparently

3  suffering from mental illness and unhappy with the Judge's ruling on a motion for reconsideration,

4  Petitioner called chambers several times, leaving six threatening messages over the course of two days in

5  late November of that year. (Mem. in Supp. of Pet. 3–5 (Dkt. No. 1-4).) The following April, a jury

6  found Petitioner guilty on one count of intimidating a judge in violation of Washington Revised Code

7  section 9A.72.160. (Dkt. No. 15, Ex. 1 at 1); WASH. REV. CODE § 9A.72.160.  Petitioner was sentenced

8  to a term of 90 days confinement, followed by 24 months of community confinement. (*Id.* Ex. 1 at 4).

9  Petitioner's period of confinement ended in May of 2005, almost two years before he filed the instant

10  petition on March 2, 2007. At issue here is a provision in Petitioner's Judgment and Sentence that

11  prohibits Petitioner from having contact with Judge McDermott or his bailiff, or going to the Kent

12  Regional Justice Center ("RJC") without counsel or prior permission for ten years. This prohibition will

13  expire in 2013. (*Id.*)

14  **II.   LEGAL STANDARD**

15        Federal subject matter jurisdiction over a habeas petition arising from a state court judgment is

16  limited to those persons "in custody" pursuant to that judgment. 28 U.S.C. § 2254(a); *Brock v. Weston*,

17  31 F.3d 887, 889 (9th Cir. 1994). Petitioner bears the burden of establishing subject matter jurisdiction.

18  *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997). To do so, he must demonstrate that the

19  condition complained of rises "to a significant restraint upon his liberty 'not shared by the public

20  generally.'" *Dow v. Circuit Court of the First Circuit*, 995 F.2d 922, 923 (9th Cir. 1993) (quoting *Jones*

21  *v. Cunningham*, 371 U.S. 236, 240 (1963)). A petitioner need not necessarily be "*physically* confined in

22  order to challenge his sentence on habeas corpus." *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (emphasis

23  added). For example, the U.S. Supreme Court has held that an individual still subject to conditions of

24  parole remains "in custody" for habeas jurisdiction purposes. *Id.* (citing *Jones*, 371 U.S. at 242).

25        However, once an individual's sentence has "fully expired . . .the collateral consequences of [an

26  ORDER – 2

1    expired sentence] are not themselves sufficient to render an individual 'in custody' for the purposes of a

2    habeas attack." *Id.* at 491–92. The distinction between a condition such as parole, significant enough to

3    constitute "custody" and an insufficient "collateral consequence" is elucidated by the Supreme Court's

4    reasoning in *Maleng*. There, the Court explained that an individual still subject to parole is still "'in

5    custody' under his unexpired sentence . . . [because] the petitioner's release from physical confinement

6    *under the sentence in question* was not unconditional; instead, it was *explicitly conditioned* on his

7    reporting regularly to his parole officer, remaining in a particular community, residence, and job, and

8    refraining from certain activities." *Id.* at 491 (emphasis added). Importantly, "the possibility that the prior

9    conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is

10   convicted" is a collateral, not direct, consequence of the original, expired sentence. *Id.* at 492.

11          Consistent with the above distinction, fines, sex offender registration, license revocation, the

12   inability to vote, engage in certain businesses, hold public office, or serve as a juror, have all been held

13   collateral consequences that do not constitute "custody." *Id.* at 491; *Williamson v. Gregoire*, 151 F.3d

14   1180, 1183 (9th Cir. 1998). These decisions are consistent with the reasoning of *Maleng*. For example,

15   while a person may be subsequently punished for failing to register as a sex offender, the resulting

16   sentence is pursuant to the second conviction for failure to register, not a continuation of an original

17   unexpired conviction for a sex offense (as when a person violates probation). *See, e.g.*, *Maleng*, 490 U.S.

18   at 487–88; *Williamson*, 151 F.3d at 1184.

19   **III.    ANALYSIS**

20          Attempting to satisfy the custody requirement necessary to demonstrate that the Court has

21   subject-matter jurisdiction, Petitioner originally identified a number of "collateral disabilities" arising from

22   his conviction. Among these were that Petitioner's conviction renders him ineligible to possess a firearm,

23   vote, or sit on a jury, and that having a criminal record poses difficulties for Petitioner in obtaining, and

24   retaining, rental housing. Magistrate Judge Benton correctly dismissed these collateral consequences as

25   insufficient to render Petitioner "in custody" for purposes of federal habeas review (R&R 4 (Dkt. No.

26   ORDER – 3

17)) and Petitioner does not renew these claims in his Objections to the R&R.

What Petitioner objects to—the central issue of contention that the Court addresses in this Order—is whether the provision prohibiting Petitioner from going to the RJC without counsel or prior permission is a restraint constituting "custody" within the meaning of 28 U.S.C. § 2254(a). Petitioner's argument is that the conditions placed on his visiting the RJC, which is generally open to the public, constitute a significant restraint on his liberty and as such, amount to "custody" for purposes of habeas jurisdiction. In support, Petitioner cites numerous cases in which courts have held restraints short of incarceration sufficient. Examples include required hours of community service, submission to drug and alcohol testing, curfews, and domestic violence treatment programs. *See, e.g.*, *Yong v. INS*, 208 F.3d 1116, 1118 n.1 (9th Cir. 2000) (reside at a half-way house and submit to drug and alcohol testing, comply with a curfew, and explain absences longer than three days); *Barry v. Bergen County Prob. Dept.*, 128 F.3d 152, 161 (3d Cir. 1997) (five hundred hours community service); *Dow*, 995 F.2d at 922 (fourteen hours of alcohol rehabilitation).

However, in many of the cases Petitioner cites, the conditions imposed by the court were imposed while the proceeding was on-going, often in the course of pretrial procedures. Illustrative of this distinction is *Hensley v. Muni. Court*, cited by Petitioner for the proposition that a person remains "in custody" even if the only obligation the court imposes is that they are to appear at all times and places ordered by any court of competent jurisdiction. 411 U.S. 345, 351 (1973). However, in *Hensley*, the petitioner was released pending execution of his sentence. *Id.* He "remain[ed] at large only by the grace of a stay" and his incarceration was not a "speculative possibility." *Id. at* 351–52. Similarly, Petitioner relies on *Means v. Navajo Nation*, in which a Tribal Court prohibited Russell Means from having any contact with his former father-in-law or going within 100 yards of his former father-in-law's home. 432 F.3d 924, 928 (9th Cir. 2005). Again, the prohibition was not the consequence of an expired sentence, but rather a condition of *pretrial release* while charges and trial were still pending. *Id.* at 928–29.

Moreover, none of the cases Petitioner cites explain why a conditional no contact order included

ORDER – 4

1   as a condition of a sentence is a more substantial restriction on an individual's liberty than, for example,

2   requiring registration as a sex offender. Under Washington law, a violation of a no contact order issued

3   as a condition in a sentence is punishable as an additional and separate offense. WASH. REV. CODE §

4   26.50.110. Petitioner fails to demonstrate how this differs from the statutory scheme addressed in

5   *Williamson*, where the court stated, "We do not think that the mere potential for future incarceration,

6   without any present restraint on liberty, can satisfy the 'in custody' requirement." 151 F.3d at 1184.

7   Petitioner's argument further ignores that the restraint imposed upon him is not absolute. Accordingly,

8   the dicta Petitioner points to in *Williamson*, which notes that the law at issue "does not specify any place

9   in Washington or anywhere else where Williamson may not go," arguably suggesting that an order to stay

10  away from a location might constitute a restraint on liberty, is simply not on point. *Id.* at 1184. Petitioner

11  has not been denied entry to the RJC. Petitioner may indeed access the RJC, so long as he is accompanied

12  by counsel or receives prior permission. Given Petitioner's history of mental illness and threats towards

13  judicial officers, the conditional order is a reasonable safety precaution and simply a collateral

14  consequence of Petitioner's expired sentence. This consequence is not a significant enough restraint to

15  qualify as "custody" for purposes of federal habeas jurisdiction.

16       Finally, the Court notes as an aside that Petitioner fails to demonstrate that he has ever been

17  denied access to the RJC. In his Objections (Dkt. No. 18), Petitioner cites multiple occasions where he

18  would have liked to visit the RJC in order to, for example, conduct legal research or bail out a friend, but

19  asserts he did not, because of the court-ordered restrictions. Petitioner does not assert that he sought

20  permission, or that permission was denied. Petitioner may in fact go to the RJC for legal purposes so long

21  as he first receives permission. Therefore, "the unfolding of events may render the entire controversy

22  academic." *Hensley*, 411 U.S. at 352. Petitioner's unwillingness to notify and seek permission does not

23  constitute "custody" under 2254(a).

24  \\

25  \\

26  ORDER – 5

**IV.    CONCLUSION**

At the time of filing his petition, Petitioner was no longer "in custody" as required under 28 U.S.C. § 2254(a). Accordingly, the Court ADOPTS the Magistrate's R&R and DISMISSES Petitioner's petition with prejudice, for lack of subject-matter jurisdiction. Respondents also allege lack of personal jurisdiction. (Dkt. No. 19.) Since the Court has determined that it lacks subject-matter jurisdiction, personal jurisdiction is a moot issue and will not be discussed here.

SO ORDERED this 19th day of October, 2007.

John C. Coughenour
United States District Judge

ORDER – 6